Mari **MARASLIGILLER**,
Plaintiff–Appellant,

v.

The **CITY OF NEW YORK**, Trustees of the Metropolitan Museum of Art, and The Metropolitan Museum of Art, Defendants–Appellees.

No. 06–2075–cv.

United States Court of Appeals, Second Circuit.

Feb. 16, 2007.

trict of New York, sitting by designation.

Raffi Momjian, Raffi Momjian, P.C., New York, NY, for Appellant.

Kenneth M. Labbate, Mound Cotton Wollan & Greengrass, New York, NY, for Appellees.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. ROSEMARY S. POOLER, Circuit Judge, Hon. LEONARD B. SAND,* District Judge.

### SUMMARY ORDER

Plaintiff-appellant Mari Marasligiller ("Marasligiller") appeals from the July 12,

---

* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York, sitting by designation.

2005 and March 29, 2006 orders of the United States District Court for the Southern District of New York (Jones, J.) which, (respectively) granted summary judgment to the defendants-appellees (the "Museum") and denied the plaintiff-appellant's motion to alter judgment. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

In brief, Marasligiller alleges that while she and her sister Roza Gedik ascended the crowded stairs leading up to the Metropolitan Museum of Art one afternoon, two boys were playing an aggressive game of tag on the steps; one boy shoved the other into her, causing her to fall down the steps and suffer injury. She claims that the Museum had either constructive or actual notice that the boys' play was dangerous to other patrons on the steps, and that by failing to stop the rough-housing, the Museum breached its duty to maintain safe conditions on its premises. Exactly what the boys were doing and for how long is the matter in dispute between the parties.

We review the grant of summary judgment de novo. *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 160 (2d Cir.2003). Summary judgment will only be granted where there is no genuine issue of material fact and a moving party is therefore entitled to a judgment as a matter of law. *Id.* at 161. A genuine issue of material fact exists where a reasonable jury could return a verdict in favor of the non-movant. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.2005). We construe the the light most favorable to the non-movant, inferences in her favor. *See Niagara Mohawk v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003).

Under New York law, "landowners and business proprietors have a duty to maintain their properties in reasonably safe condition." *Di Ponzio v. Riordan*, 89

N.Y.2d 578, 657 N.Y.S.2d 377, 679 N.E.2d 616, 618 (1997). "[T]his duty may extend to controlling the conduct of third persons who frequent or use the property, at least under some circumstances." *Id.* New York courts have recognized a landowner's duty to control the behavior of children who are behaving in an unruly fashion if the business owner has sufficient notice of the danger. *See, e.g., Rodriguez v. 1201 Realty LLC*, 10 A.D.3d 253, 781 N.Y.S.2d 328, 330 (N.Y.App. Div. 1st Dept.2004) (reversing summary judgment in favor of hospital where nurses were on notice of unruly children in waiting room who knocked over another child); *Wilson v. Leisure Time Recreation, Inc.*, 192 Misc.2d 553, 746 N.Y.S.2d 821, 824–26 (N.Y.Civ.Ct.2002) (denying summary judgment to bowling alley where staff was on notice of a group of children running around "wildly out of control").

The district court granted the Museum's motion because Marasligiller's only evidence of actual or constructive notice was testimony from Roza Gedik that the boys were playing on the steps for some minutes before the accident, and the district court found that testimony to be so vague and contradictory that a reasonable jury would have to speculate to find for Marasligiller.

For its part, the Museum offered no eyewitness testimony to rebut Marasligiller's allegation that the Museum was on notice of children behaving in an unruly fashion; it instead offered an employee's testimony that a single guard would ordinarily watch the steps on which Marasligiller fell, that some unidentified guard was on duty that day, and that museum policy dictated that the guard would have stopped any children who were running on the steps.

■ We disagree with the district court that Gedik's testimony was particularly

contradictory. The Museum contends that Gedik estimated that the boys were running around for "one minute," "five minutes," and also "ten minutes." But the questions posed by the defense that elicited these answers were not identical. And we think the following exchange clarifies the ambiguity:

Q:.... How much time from when you first saw the boys pushing each other to the time you saw them push into Ms. Marasligiller?

A: It was approximately five minutes. When Mari came down, when they were playing and Mari came down and when they hit her, it took about one minute when she fell.

(Gedik Dep. 64:5–12.) There is no contradiction in the record, even putting aside the contents of the errata sheet Marasligiller submitted, once one allows for: some confusion about the wording of the questions; confusion about whether the children were merely seen on the steps or were seen playing, or running, or pinching, or fighting; and the fact that—as both counsel recognized—the translator was an imperfect vessel. We think Gedik's testimony reflects that Gedik saw the boys playing aggressively for approximately five minutes before the accident and that the impact and fall took place within one minute; the various phrases she used to describe the boys' play are not inconsistent with one another. It is also appropriate to consider Gedik's affidavit that she saw the boys were playing *continuously* throughout the five minute period, because this does not contradict any of her deposition testimony: she was never asked any question on the issue. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001) (a litigant cannot defeat summary judgment by advancing "factual allegations ... for the first time in the plaintiff's affidavit opposing summary judgment [where] that affidavit contradicts her own prior deposition testimony.").

The district court's opinion seems to place some burden on Marasligiller to present evidence of the absence of a guard on the steps of the Museum. However, a negligence action under these circumstances could proceed under several theories: (1) that some unidentified guard, a museum employee, had actual notice of these particular boys as a danger to other patrons and negligently failed to discharge the Museum's duty to maintain the premises in a safe condition by stopping the boys, *see Rodriguez*, 781 N.Y.S.2d at 330; (2) that the museum was on constructive notice of these boys as a dangerous defect because of the length of time the boys were at play, *see Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986), whether or not any guard was present; or (3) that the injury occurred because the Museum placed no guard on the steps, which in itself was a failure to take the minimal security precautions expected of a landowner who from past experience has reason to foresee that unruly third persons may endanger the safety of those on the Museum's premises, *see Maheshwari v. City of New York*, 2 N.Y.3d 288, 778 N.Y.S.2d 442, 810 N.E.2d 894, 897 (2004); *Burgos v. Aqueduct Realty Corp.*, 92 N.Y.2d 544, 684 N.Y.S.2d 139, 706 N.E.2d 1163, 1164 (1998).

■ Under the third theory, Marasligiller would need to show there was no guard (or too few). But if the boys were playing long enough that the Museum was on constructive notice, as Marasligiller argues, it does not matter whether there was a guard on the steps. A landowner will be charged with constructive notice when "a defect [is] visible and apparent and ... exist[s] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon*, 501 N.Y.S.2d 646, 492 N.E.2d at 775.

In that event, it would not matter whether the defect was left unattended because the landlord chose not to place employees in the relevant area, chose to place too few employees, or chose to place numerous employees who on the day in question were incompetent, inattentive, or truant. The question is whether, under the circumstances, knowledge should be imputed to the landowner because it reasonably should have noticed the defect through its employees. We believe that Gedik's testimony raises a genuine issue of fact as to whether the Museum was on constructive notice.

Finally, the district court observed that Marasligiller had presented no evidence that a guard on the steps had actual notice of the boys' conduct. But we think it more accurate to say Marasligiller had presented no *direct* evidence speaking to that point: evidence that the boys roughhoused on the steps for an appreciable amount of time is *both* evidence supporting a theory of constructive notice and circumstantial evidence suggesting that if there was a guard on duty who has been trained to watch for such conduct, that guard may have had actual notice that the boys were putting museum patrons in danger.

For the reasons set forth above, the judgment of the district court is hereby **VACATED** and the case is **REMANDED** for proceedings consistent with this order.